1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12   PATRICK ANTHONY SEYMOUR,      )     No. CV 06-6214-VBF (CW)
                                   )
13                  Petitioner,    )     REPORT AND RECOMMENDATION OF
                                   )     UNITED STATES MAGISTRATE JUDGE
14        v.                       )
                                   )
15   LARRY E. SCRIBNER,            )
                                   )
16                  Respondent.    )
     _____)

17

18        This Report and Recommendation is submitted to the Honorable

19   Valerie Baker Fairbank, United States District Judge, pursuant to 28

20   U.S.C. § 636 and General Order 194 of the United States District Court

21   for the Central District of California.  For reasons stated below, the

22   petition for habeas corpus relief should be denied and this action

23   dismissed with prejudice.

24                    **I.   <u>PROCEDURAL HISTORY</u>**

25        Petitioner, a prisoner in state custody, challenges a conviction

26   in California Superior Court, Los Angeles County, Case No. LA040972-4.

27   [Reporter's Transcript ("RT") at 1.]  On February 5, 2004, a jury

28   found Petitioner guilty of two counts of second degree robbery, one

                                    1

count of receiving stolen property, one count of carjacking, and one count of vehicle theft. [Clerk's Transcript ("CT") at 412-16.] The jury also found true the allegations that a principal was armed in the commission of the two robberies and the carjacking and that Petitioner personally used a firearm in the commission of one of the robberies and the carjacking. [Id.]

On April 23, 2004, the trial court sentenced Petitioner to a total of twenty years, four months in prison. [RT at 460-63; CT at 445.] In reaching that sentence, the trial court imposed the upper term of nine years for Petitioner's carjacking conviction. [RT at 460-61; CT at 445.] The court also imposed a consecutive ten-year sentence based on the jury's finding that Petitioner personally used a firearm, a one-year consecutive term for one of the two robbery counts, and a four-month consecutive sentence based on the jury's finding that a principal was armed with a firearm in the commission of the robbery. [RT at 460-62; CT at 445.] The court imposed concurrent sentences on the remaining counts. [RT at 461-63; CT at 445.]

Petitioner appealed. [Respondent's Lodged Doc. No. 2.] On July 25, 2005, the California Court of Appeal affirmed the judgment in an unpublished opinion. [Lodged Doc. No. 5.] Petitioner then filed a petition for review in the California Supreme Court. [Lodged Doc. No. 6.] On September 28, 2005, the supreme court summarily denied review. [Lodged Doc. No. 7.]

Petitioner filed the present Petition for Writ of Habeas Corpus by a Person in State Custody (28 U.S.C. § 2254) ("Petition") on September 28, 2006. On April 23, 2007, Respondent filed a return. Therein, Respondent addressed the merits of Petitioner's claims, but argued that Petitioner's claim challenging his sentence had

effectively become unexhausted in light of the United States Supreme Court's intervening opinion in Cunningham v. California, 549 U.S. 270, 127 S. Ct. 856, 166 L. Ed. 2d 856 (2007).  On May 14, 2007, Petitioner filed a traverse.

On July 13, 2007, Petitioner asked that the court stay the case pending Petitioner's exhaustion of his Cunningham claim.  On July 18, 2007, the court granted the request and stayed the case.  On April 18, 2008, Petitioner notified the court that the California Supreme Court had denied his Cunningham claim, and, on July 30, 2008, the court vacated the stay.  On July 8, 2009, Respondent filed a supplemental answer.  Petitioner did not file a supplemental reply, although he was granted additional time in which to do so.  The petition has been taken under submission without oral argument.

## II.  **FACTUAL BACKGROUND**

On July 8, 2002, an employee of Sunrise Ford, a North Hollywood car dealership, discovered that a 2002 white Ford Expedition had been stolen from the dealership lot.  [RT at 80-82.]  Two days later, on July 10, 2002, at approximately 8:40 p.m., Petitioner and a companion entered Jaby's Liquor Store in North Hollywood.  [RT at 144-45.] Petitioner pulled out a gun, pointed it at the cashier, and shouted, "Give me the money."  [RT at 145.]  Petitioner then took $80.00 from the cash register, while his companion took several small liquor bottles from the counter.  [RT at 146-48.]  When the two men left, the cashier called the police, but she was unable to identify the robbers. [RT at 149.]

Approximately twenty minutes later, Petitioner, who was driving in the stolen Ford Expedition [RT at 334], entered an Albertson's parking lot and approached a woman who was unloading her groceries.

3

1  [RT at 151-52, 154-55, 159.]  The woman had placed her purse in a
2  shopping cart she was using.  [RT at 154.]  Petitioner spoke with the
3  woman briefly and then drove off in the Ford Expedition.  [RT at
4  154-55, 159, 334.]  Once he left, the woman noticed that her purse
5  was missing.  [RT at 155.]

6      Four hours later, at approximately 1:00 a.m. on July 11, 2002,
7  Petitioner and his companions, still driving in the stolen Ford
8  Expedition, drove past Hugo Rodriguez's residence.  [RT at 39-40.]  At
9  the time, Rodriguez was sitting in his Toyota Camry, which was parked
10 in front of his home.  [RT at 38-39.]  Petitioner then backed up the
11 Ford Expedition to where Rodriguez was parked and asked Rodriguez,
12 "What did you say to me?"  [RT at 40.]  Rodriguez replied that he had
13 said nothing.  [RT at 40.]  After a brief exchange of words,
14 Petitioner exited the Ford Expedition, drew his gun, and demanded that
15 Rodriguez turn over his wallet.  [RT at 40-41.]  Rodriguez complied.
16 [RT at 41.]  Petitioner then demanded the keys to Rodriguez's Camry.
17 [RT at 42.]  Rodriguez again complied, exited his car, and began to
18 walk away slowly.  [RT at 42-43.]  After speaking with his companions,
19 Petitioner entered the Camry and drove off, while one of his
20 companions drove the Ford Expedition off in a different direction.
21 [RT at 43.]  In total, the interaction between Petitioner and
22 Rodriguez lasted approximately ten minutes.  [RT at 61.]

23     Once Petitioner left, Rodriguez called the police to report what
24 had just happened.  [RT at 47-48.]  Rodriguez's Camry was equipped with
25 a locating device that, when activated, emitted a signal allowing the
26 police to determine its location.  [RT at 201-03.]  Upon arriving at
27 the general area indicated by the signal, the police set up a
28 perimeter and began a foot search.  [RT at 204-07.]  An officer

discovered the Camry and the Ford Expedition in a parking lot and saw Petitioner and three other men moving items from the Expedition to the Camry. [RT at 229-31.] The officer withdrew her gun from its holster and yelled "police." [RT at 232.] In response, Petitioner and his companions began running in different directions. [RT at 232-34.] Petitioner was later apprehended by another officer. [RT at 208.]

When police searched Petitioner, they recovered, among other things, Rodriguez's ATM card, items belonging to the woman from the Albertson's parking lot, and the key to Rodriguez's Camry. [RT at 35-38, 152-54, 210-12, 284-85.] After Petitioner was arrested and taken to the police station, he confessed that had stolen the woman's purse in the Albertson's parking lot, attempted to rob Jaby Liquor Store, and stolen Rodriguez's Camry. [RT at 334-35.] Although he admitted that a gun had been used in committing some of these acts, he denied that he personally used the gun. [RT at 334-35.]

### III.   PETITIONER'S CLAIMS

Petitioner states the following claims for federal habeas relief:

1. The trial court erred in admitting into evidence Petitioner's custodial statements to police because Petitioner did not knowingly, voluntarily, and intelligently waive his constitutional right to remain silent.

2. The trial court denied Petitioner his right to due process by instructing the jury with CALJIC 2.15.

3. The trial court denied Petitioner his right to due process by instructing the jury with CALJIC 2.52.

4. Trial counsel's failure to request a jury instruction to supplement CALJIC 2.52 and his failure to object to the trial court's use of CALJIC 2.52 should be excused.

1   5.   The trial court violated Petitioner's Sixth Amendment right to a
2        jury trial by imposing an upper term sentence based on facts
3        neither admitted by Petitioner nor found by the jury.

### IV.   STANDARD OF REVIEW

4        A federal court may review a habeas petition by a person in
5   custody under a state court judgment "only on the ground that he is in
6   custody in violation of the Constitution or laws or treaties of the
7   United States."   28 U.S.C. § 2254(a).   Federal habeas relief is not
8   available for state law errors.   Swarthout v. Cook, ___ U.S. ___, 131
9   S. Ct. 859, 861, ___ L. Ed. 2d ___ (2011)(per curiam)(citing Estelle
10  v. McGuire, 502 U.S. 62, 67, 112 S. Ct. 475, 116 L. Ed. 2d 385
11  (1991)).

12       Pursuant to the Antiterrorism and Effective Death Penalty Act of
13  1996 ("AEDPA"), a federal court may not grant habeas relief on a claim
14  adjudicated on its merits in state court unless that adjudication
15  "resulted in a decision that was contrary to, or involved an
16  unreasonable application of, clearly established Federal law, as
17  determined by the Supreme Court of the United States," or "resulted in
18  a decision that was based on an unreasonable determination of the
19  facts in light of the evidence presented in the State court
20  proceeding."   28 U.S.C. § 2254(d).   "When a federal claim has been
21  presented to a state court and the state court has denied relief, it
22  may be presumed that the state court adjudicated the claim on the
23  merits in the absence of any indication or state-law procedural
24  principles to the contrary."   Harrington v. Richter, ___ U.S. ___, 131
25  S. Ct. 770, 784-85, ___ L. Ed. 2d ___ (2011).

26       As used in § 2254(d), the phrase "clearly established federal
27  law" means "holdings of the Supreme Court at the time of the state

court decision." <u>Stanley v. Cullen</u>, ___ F.3d ___, No. 08-99026, 2011 WL 285218, at *4 (9th Cir. Jan. 31, 2011)(<u>citing</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)). Although only Supreme Court law is binding, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." <u>Stanley</u>, 2011 WL 285218 at *4 (<u>quoting</u> <u>Maxwell v. Roe</u>, 606 F.3d 561, 567 (9th Cir. 2010)).

A state court decision is "contrary to" clearly established law if it applies a rule contradicting Supreme Court law or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. <u>Price v. Vincent</u>, 538 U.S. 634, 640, 123 S. Ct. 1848, 155 L. Ed. 2d 877 (2003). A decision involves an "unreasonable application" of clearly established law "'if the state court identifies the correct governing legal principle'" from Supreme Court precedent, "'but unreasonably applies that principle to the facts of the prisoner's case.'" <u>Chia v. Cambra</u>, 360 F.3d 997, 1002 (9th Cir. 2004)(<u>quoting</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003)).

"To show that a state court's application of Supreme Court precedent was 'unreasonable,' the petitioner must establish that the state court's decision was not merely incorrect or erroneous, but 'objectively unreasonable.'" <u>Pinholster v. Ayers</u>, 590 F.3d 651, 662 (9th Cir. 2009)(en banc), <u>cert.</u> <u>granted</u> <u>sub</u> <u>nom</u> <u>Cullen v. Pinholster</u>, _ _ U.S. ___, 130 S. Ct. 3410, 177 L. Ed. 2d 323 (2010)(<u>citing</u> <u>Williams</u>, 529 U.S. at 409-10). Similarly, "[a] state court decision 'based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the

7

state-court proceeding.'" Stanley, 2011 WL 285218 at *4 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)). Under the "objectively reasonable" standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 131 S. Ct. at 786 (citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004)).

In reviewing a state court adjudication, a federal habeas court looks to the last reasoned state decision on a claim as the basis for the state court's final judgment on that claim. Pinholster, 590 F.3d at 662; see also Stanley, 2011 WL 285218, at *4 (citing Maxwell v. Roe, 606 F.3d 561, 568 (9th Cir. 2010)). Where there is no reasoned state court decision, the federal court must "independently review the record." Stanley, 2011 WL 285218 at *4 (quoting Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002)). In making such a review, "a habeas court must determine what arguments or theories supported, or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Harrington, 131 S. Ct. at 786.

In sum, the AEDPA statute preserves the authority of federal courts "to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents. It goes no farther." Id. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that

there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement." Id. at 786-87.

## V.  DISCUSSION

### A.   CLAIM ONE – ADMISSIBILITY OF PETITIONER'S CONFESSION

In his first claim for relief, Petitioner contends that the trial court violated his right to a fair trial by admitting into evidence Petitioner's custodial confession to police.  The confession, according to Petitioner, should have been excluded because Petitioner gave it without voluntarily, knowingly, and intelligently waiving his Miranda[1] rights.  Specifically, Petitioner, who was only sixteen years old when the custodial interrogation occurred, contends that he did not understand his right to remain silent and that he was not allowed to call his mother.  Petitioner maintains that he confessed only because he was promised that he would be able to telephone his mother and because one of the interrogating officers told him that everything would be "okay" if Petitioner confessed.

### 1.  Background

Before trial, Petitioner moved to exclude from evidence an incriminating confession he made to police. [CT at 316-20.]  The trial court held an evidentiary hearing, at which Petitioner and Officer Shawn Smith and Detective Ronald Rawson, the two officers involved in his custodial interrogation, testified. [Supp. Reporter's Transcript ("SRT") at B1-37.]

At the hearing, both Officer Smith and Petitioner testified that Officer Smith took Petitioner into custody and, thereafter, read Petitioner his Miranda rights. [Id. at B5-6.]  From that point,

---

[1]  Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed. 2d 694 (1966).

however, their testimonies diverged.  According to Officer Smith, Petitioner said that he understood the rights that Officer Smith had read to him.  [Id. at B7.]  Smith further testified that Petitioner did not ask to call anyone.  [Id. at B10.]  Petitioner, on the other hand, denied having told Officer Smith that Petitioner understood the rights that Officer Smith had read to him and denied that he understood those rights.  [Id. at B26.]  Petitioner also testified that he asked Officer Smith for permission to call his mother, but that Officer Smith said that Petitioner would be allowed to do so after speaking with detectives.  [Id. at B27.]

Petitioner's account of the interrogation also conflicted with that of Detective Rawson.  Detective Rawson testified that he also read Petitioner his Miranda rights, pausing after each right to ask Petitioner if he understood it.  [Id. at B19-20.]  According to Detective Rawson, Petitioner stated that he understood each right read to him.  [Id.]  Detective Rawson then testified that he asked Petitioner if he wanted to talk about the case, and Petitioner said yes.  [Id. at B20.]  After talking to Detective Rawson, Petitioner wrote out a statement incriminating himself in the crimes charged.  [Id. at B21.]  Like Officer Smith, Detective Rawson testified that Petitioner never asked to call anyone, even though Detective Rawson offered him the opportunity to do so.  [Id. at B18, B20, B22-23.]

Petitioner gave a dramatically different account.  He testified that Detective Rawson never read Petitioner his Miranda rights.  [Id. at B28.]  Petitioner further testified that he asked Detective Rawson to allow him to call his mother.  [Id.]  According to Petitioner, Detective Rawson refused this request and said that "it would be best if I dealt with him first and talk to my mother later."  [Id.]

10

Petitioner then testified that he asked if he needed "legal advice," to which Detective Rawson answered, "No, the matter isn't that serious." [Id. at B29.] Although Petitioner conceded that he wrote out the statement incriminating himself, he testified that he did so only "because at the time [Detective Rawson] told me that if I cooperate with them I would get my phone call, that everything would be okay." [Id.] Petitioner also testified Detective Rawson stated that "he was the officer who had control of [Petitioner's] life, so it would be better if [Petitioner] just cooperate." [Id.]

No one disputed that Petitioner never signed a written waiver of his Miranda rights or that Petitioner was a juvenile at the time of his arrest and had no criminal record. Having heard all of the relevant testimony and the arguments of counsel, the trial court denied Petitioner's motion to suppress. [Id. at 40.] In doing so, the court made no explicit factual findings and provided no reasoning for its decision. [See id.]

**2.  Legal Standard**

Under the Fourteenth Amendment, a confession is involuntary only if the police use coercive means to undermine the suspect's ability to exercise his free will. See Colorado v. Connelly, 479 U.S. 157, 167, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986). The police, however, can interrogate a suspect if he or she voluntarily, knowingly, and intelligently waives his or her constitutional rights. Patterson v. Illinois, 487 U.S. 285, 292, 108 S. Ct. 2389, 101 L. Ed. 2d 261 (1988); Moran v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986). A waiver is valid if the suspect intentionally relinquished his or her rights with full awareness of the nature of the rights and the consequences of the decision. Patterson, 487 U.S.

1   at 292; <u>Moran</u>, 475 U.S. at 421.   The warnings prescribed by <u>Miranda v.</u>
2   <u>Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed. 2d 694 (1966), are
3   sufficient to apprise the suspect of the nature and consequences of
4   abandoning his or her rights.   <u>See</u> <u>Patterson</u>, 487 U.S. at 296.

5        The test for determining whether a confession is involuntary is
6   whether, considering the totality of the circumstances, the confession
7   was obtained by means of physical or psychological coercion or
8   improper inducement such that the suspect's will was overborne.
9   <u>Moran</u>, 475 U.S. at 421; <u>Miller v. Fenton</u>, 474 U.S. 104, 112, 106 S.
10  Ct. 445, 88 L. Ed. 2d 405 (1985)(voluntariness of confession is legal
11  issue requiring independent determination in federal habeas corpus
12  proceeding); <u>Culombe v. Connecticut</u>, 367 U.S. 568, 602, 81 S. Ct.
13  1860, 6 L. Ed. 2d 1037 (1961)(test for voluntariness is whether
14  confession was product of essentially free and unconstrained choice).

15       Although several factors are considered in determining whether a
16  confession was involuntary, "coercive police activity is a necessary
17  predicate to [a] finding that a confession is '[in]voluntary' within
18  the meaning of the Due Process Clause." <u>Connelly</u>, 479 U.S. at 167
19  (reversing determination that <u>Miranda</u> waiver was involuntary when
20  ruling was based on psychiatrist's testimony that defendant, who
21  believed that the "voice of God" told him to confess, was not capable
22  of free choice); <u>Withrow v. Williams</u>, 507 U.S. 680, 693, 113 S. Ct.
23  1745, 123 L. Ed. 2d 407 (1993)(police coercion as "crucial element" to
24  determining confession was involuntary).   In addition to the level of
25  police coercion, other relevant factors include the length of the
26  interrogation, its continuity, and the defendant's maturity,
27  education, physical condition, and mental health.   <u>Id.</u> at 693-94.
28  Another factor in evaluating the voluntariness of a confession is "the

failure of police to advise the defendant of his rights to remain
silent and to have counsel present during custodial interrogation."
Id. at 694.  "It is not sufficient for a court to consider the
circumstances in isolation. Instead, 'all the circumstances attendant
upon the confession must be taken into account.'" Doody v. Schriro,
596 F.3d 620, 638 (9th Cir. 2010) (quoting Reck v. Pate, 367 U.S. 433,
440, 81 S. Ct. 1541, 6 L. Ed. 2d 948 (1961)).

### 3.   Application

In rejecting Petitioner's challenge to the trial court's ruling
on the admissibility of his custodial statements, the court of appeal
accurately summarized the relevant hearing testimony.  [Lodged Doc.
No. 5 at 2-3.]  In affirming the trial court's ruling, the court of
appeal observed that the trial court rejected Petitioner's version of
events in favor of Officer Smith's and Detective Rawson's versions.
[Id. at 4.]  Because substantial evidence in the record supported the
trial court's resolution of the conflicting evidence, the court of
appeal refused to disturb the trial court's decision.  [Id.]

The court of appeal did not commit constitutional error in
rejecting Petitioner's challenge to the admissibility of his custodial
confession.  First, in denying Petitioner's challenge to the
admissibility of his custodial statements, the trial court implicitly
found that Petitioner's account of the relevant events was not
credible.  As the Ninth Circuit has explained, "not every finding of
fact need be stated on the record in infinite detail and clarity.  In
certain circumstances [courts] will recognize that a factual
determination is implicit in the actions taken by a state court."
Knaubert v. Goldsmith, 791 F.2d 722, 727 (9th Cir. 1986).  Thus, when
a state court rules after an evidentiary hearing, a federal court may

13

1  assume that the state court found the facts necessary to support its
2  ultimate legal conclusion "unless there is some indication that the
3  state court applied an incorrect legal standard." Knaubert, 791 F.2d
4  at 727 (9th Cir. 1986)(citing Townsend v. Sain, 372 U.S. 293, 313-14,
5  83 S. Ct. 745, 9 L. Ed. 2d 770 (1963)); Trojani v. Poole, 858 F. Supp.
6  1051, 1063 (N.D. Cal. 1994)(factual findings may be implied from state
7  trial court's ruling)(citing Knaubert, 791 F.2d at 727); cf. Nunes v.
8  Mueller, 350 F.3d 1045, 1056 (9th Cir. 2003)(refusing to defer to
9  state court's factual findings where those findings were made after
10 state court refused to hold evidentiary hearing on facts underlying
11 Petitioner's claim); Moran v. Godinez, 972 F.2d 263, 267 n.8 (9th Cir.
12 1992)(declining to infer state court made further findings needed to
13 support legal conclusion when state court applied wrong legal
14 standard), rev'd in part on other grounds by Godinez v. Moran, 509
15 U.S. 389, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993).

16      Moreover, where it is clear under applicable federal law that the
17 state trial court would have granted a petitioner's requested relief
18 had it believed the petitioner's testimony, the trial court's "failure
19 to grant relief [is] tantamount to an express finding against the
20 credibility of the [Petitioner]." Marshall v. Lonberger, 459 U.S.
21 422, 433-34, 103 S. Ct. 843, 74 L. Ed. 2d 646 (1983)(citing LaVallee
22 v. Delle Rose, 410 U.S. 690, 93 S. Ct. 1203, 35 L. Ed. 2d 637 (1973)
23 (per curiam)); Weaver v. Palmateer, 455 F.3d 958, 964 (9th Cir. 2007)
24 (given contradictory nature of post-conviction testimony, state court
25 rejection of ineffective assistance of counsel claim showed court
26 found attorney's testimony credible and petitioner's testimony not
27 credible); Creech v. Arave, 947 F.2d 873, 887 (9th Cir. 1991)(in
28 denying petitioner's motion to withdraw plea, state court "implicitly

rejected factual circumstances that [petitioner] alleges invalidate his plea"), rev'd in part on other grounds, 507 U.S. 463, 113 S. Ct. 1534, 123 L. Ed. 2d 188 (1993).

Here, the trial court's denial of Petitioner's motion to suppress amounted to a factual finding that the testifying officers were more credible than Petitioner.  Had the trial court believed Petitioner, it would have granted the motion.  According to his account, he neither waived nor understood his Miranda rights; instead, he simply heard them once.  Moreover, Petitioner – who was only sixteen years old when the interrogation occurred – testified that he was subjected to threats, prevented from calling his mother, and promised that confessing would make everything "okay."  In denying the motion to suppress, the trial court implicitly rejected Petitioner's version of events and accepted the officers' versions.  According to the officers, Petitioner twice heard his Miranda rights and twice acknowledged that he understood them.  He was not subjected to any threats, offered any promises, or denied the opportunity to make a phone call.

Moreover, the trial court's implicit findings are entitled to deference under AEDPA.[2]  In assessing the reasonableness of a state court's factual finding, the federal court "must be particularly deferential to [its] state-court colleagues."  Taylor v. Maddox, 366 F.3d 992, 1000 (9th Cir. 2004).  Further, courts reviewing habeas petitions must give "'special deference'" to the state trial court's

_____

[2]  See Miller v. Fenton, 474 U.S. 104, 112, 106 S. Ct. 445, 88 L. Ed. 2d 405 ("[S]ubsidiary factual questions, such as . . . whether in fact the police engaged in the intimidation tactics alleged by the defendant are entitled to the § 2254(d) presumption.  And the federal habeas court, should, of course, give great weight to the considered conclusions of a coequal state judiciary.")(citations omitted).

credibility determinations.  Patton v. Yount, 467 U.S. 1025, 1038, 104 S. Ct. 2885, 81 L. Ed. 2d 847 (1984)(citation omitted).  To conclude that a state court finding is unsupported by substantial evidence in the state court record, "it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision."  Taylor, 366 F.3d at 1000.  Rather, the federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record."  Id.  "This is a daunting standard – one that will be satisfied in relatively few cases."  Id.; see also Rice v. Collins, 546 U.S. 333, 341-42, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006)(on habeas review disagreement among reasonable minds on state court's factual finding "does not suffice to supersede the trial court's credibility determination").

Here, the trial court's implicit credibility finding was supported by the record, specifically by the testimony of the two officers.  The trial court had to resolve two conflicting accounts of the interrogation.  Having heard those accounts and having had an opportunity to assess the witnesses's demeanor, the trial court resolved the conflicts in favor of the officers.  That resolution was not unreasonable and is, therefore, entitled to deference.

The officers' accounts of the interrogation do not suggest that the resulting confession was involuntary.  To be sure, "admissions and confessions of juveniles require special caution."  In re Gault, 387 U.S. 1, 45, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967); Doody, 596 F.3d at 638.  Moreover, a juvenile's lack of prior experience in the criminal justice system is relevant to determining whether the juvenile's confession is involuntary.  Doody, 596 F.3d at 639 (holding

16

that seventeen-year-old's confession was involuntary, in part, because seventeen-year-old had no prior experience with criminal justice system).  However, there is no per se rule that minors' confessions are inherently involuntary.  Where inexperienced minors' confessions have been found involuntary, the interrogations have involved some evidence of police coercion or overreaching.  Id. (confession involuntary when juvenile's sleep deprivation over thirteen-hour interrogation made him unresponsive and he was forced to sit in straight back chair with nothing to lean on); see also Haley v. Ohio, 332 U.S. 596, 599-600, 68 S. Ct. 302, 92 L. Ed. 224 (1948)(confession of fifteen-year-old boy involuntary when suspect confessed after being questioned from midnight until 5:00 a.m.).  Here, Petitioner points to no evidence of coercion, other than his own discredited testimony.

Accordingly, habeas relief is not warranted on this claim.

**B.   CLAIMS TWO AND THREE – ALLEGED INSTRUCTIONAL ERROR**

Among the instructions given to the jury at Petitioner's trial were CALJIC Nos. 2.15 (Possession of Stolen Property) and 2.52 (Flight After Crime).  [RT at 382-83, 386; CT 369, 376.]  Petitioner alleges that these instructions violated his federal right to due process because they allowed the jury to make unwarranted inferences regarding his guilt, thereby lowering the State's burden to prove Petitioner guilty of each crime beyond a reasonable doubt.

**1.   Legal Standard**

To the extent that the jury instructions given at Petitioner's trial allegedly were incorrect under state law, such a defect would provide Petitioner no basis for federal habeas relief.  Estelle v. McGuire, 502 U.S. at 71-72; see also Lewis v. Jeffers, 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990)("[F]ederal habeas

17

corpus relief does not lie for errors of state law."). Instead, the question on habeas review is whether an alleged instructional error "by itself so infected the entire trial that the resulting conviction violates due process." Estelle, 502 U.S. at 71-72 (quoting Cupp v. Naughten, 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973)).

Where a habeas claim rests on alleged constitutional error in an instruction given to the jury, the challenged instruction "may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Cupp, 414 U.S. at 146-147; see Middleton v. McNeil, 541 U.S. 433, 437, 124 S.Ct. 1830, 158 L.Ed.2d 701 (2004)(per curiam)("If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." (citations and internal quotation marks omitted)). Moreover, even if instructional error is found to rise to the level of a constitutional violation under this standard, federal habeas relief is unavailable without further inquiry to determine whether the error was harmless. "The court must find that the error, in the whole context of the particular case, had a substantial and injurious effect or influence on the jury's verdict." Calderon v. Coleman, 525 U.S. 141, 147, 119 S. Ct. 500, 142 L. Ed. 2d 521 (1998)(applying Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)); see also Beardslee v. Woodford, 358 F.3d 560, 577-78 (9th Cir. 2004) (finding instructional errors harmless).

The Due Process Clause protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the charged crime. In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). The State, therefore, may not use

18

evidentiary presumptions in a jury charge that effectively relieve the prosecution of its burden to prove every essential element of the crime beyond a reasonable doubt. <u>See</u> <u>Francis v. Franklin</u>, 471 U.S. 307, 313, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985); <u>Sandstrom v. Montana</u>, 442 U.S. 510, 520-24, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979).

Permissive inference instructions, such as the two instructions challenged here,[3] are constitutional if the conclusion the instructions suggest can be justified by reason and common sense in light of the proven facts before the jury. <u>Francis</u>, 471 U.S. at 314-15; <u>Hanna v. Riveland</u>, 87 F.3d 1034, 1037 (9th Cir. 1996); <u>United States v. Warren</u>, 25 F.3d 890, 897 (9th Cir. 1994). Permissive inference instructions do not affect the application of the "beyond a reasonable doubt" standard unless there is no rational way the jury could make the connection permitted by the inference. <u>Ulster County Court v. Allen</u>, 442 U.S. 140, 157, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979)("Because [a] permissive inference instruction leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way the trier [of fact] could make the connection permitted by the inference."); <u>Warren</u>, 25 F.3d at 897 n.4.

---

[3] It is clear, from its first two lines, that CALJIC 2.15 is a permissive inference instruction: "If you find that a defendant was in conscious possession of recently stolen property, the fact of that possession is not by itself sufficient to permit an inference that the defendant is guilty of the crime of robbery, carjacking and petty theft. <u>Before guilt may be inferred</u>, there must be corroborating evidence tending to prove defendant's guilt." [RT at 382-83; CT at 369 (emphasis added).] CALJIC 2.52 uses equally permissive language: "The flight of a person after the commission of a crime . . . is a fact which, if proved, <u>may be considered</u> by you in the light of other proved facts in deciding whether a defendant is guilty or not." [RT at 386; CT at 376 (emphasis added).]

19

**2.   <u>Application</u>**

Neither of Petitioner's claims of instructional error warrants habeas relief.  Each claim is addressed below.

**a.   CALJIC 2.15 (Conscious Possession of Recently Stolen Property)**

The court read the jury the following instruction on conscious possession of recently stolen property:

> If you find that a defendant was in conscious possession of recently stolen property, the fact of that possession is not by itself sufficient to permit an inference that the defendant is guilty of the crime of robbery, carjacking and petty theft. Before guilt may be inferred, there must be corroborating evidence tending to prove defendant's guilt. However, this corroborating evidence need only be slight, and need not by itself be sufficient to warrant an inference of guilt.
>
> As corroboration, you may consider the attributes of possession—time, place and manner, that the defendant had an opportunity to commit the crime charged, the defendant's conduct, his false or contradictory statements, if any, and other statements he may have made with reference to the property a false account of how he acquired possession of the stolen property any other evidence which tends to connect the defendant with the crime charged.

[RT at 382-83; CT at 369.]

Petitioner contends that this instruction improperly allowed the jury to infer Petitioner's guilt based on his possession of stolen property, provided that there was corroborating evidence, however

slight.  According to Petitioner, his possession of stolen property may have been relevant to whether he received stolen property or committed theft, but it had no bearing to whether he committed carjacking or robbery.  Petitioner claims that, by allowing the jury to infer guilt based on his possession of stolen property, CALJIC 2.15 lessened the prosecutor's burden of proving Petitioner's guilt beyond a reasonable doubt.  Further, Petitioner contends that the trial court compounded its initial error of instructing the jury with CALJIC 2.15 by failing to instruct the jury that any inference of guilt arising from Petitioner's possession of stolen property could be dispelled by other evidence admitted at trial.

The court of appeal rejected Petitioner's challenges to the trial court's decision to use CALJIC 2.15.  In rejecting Petitioner's challenge, the court of appeal explained that it had previously found that CALJIC 2.15 does not violate due process.  [Lodged Doc. No. 5 at 5 (citing People v. Gamble, 22 Cal. App. 4th 446, 452-55, 27 Cal. Rptr. 2d 451 (1994); People v. Prieto, 30 Cal. 4th 226, 248-49, 133 Cal. Rptr. 2d 18 (2003); People v. Holt, 15 Cal. 4th 619, 676-77, 63 Cal. Rptr. 2d 782 (1997).]  The court of appeal further explained that Petitioner had waived his challenge to the trial court's failure to supplement CALJIC 2.15 by failing to request a clarifying instruction.  [Lodged Doc. No. 5 at 5.]  Even though Petitioner had waived this challenge, the court of appeal noted that the other instructions with which the jury was instructed made clear that the jury was free to consider other evidence that might dispel any inference implicated by Petitioner's conscious possession of stolen property.  [Id. at 5-6.]

The court of appeal did not commit constitutional error in rejecting Petitioner's challenges to CALJIC 2.15.  First, CALJIC 2.15

21

did not lower the prosecution's burden of proof because a rational
trier of fact could have made a connection between Petitioner's
conscious possession of stolen property and his guilt regarding
carjacking and robbery.  Indeed, among the stolen property recovered
from Petitioner was property stolen during the carjacking and robbery.
[RT at 37-38.]  Also, the property was recovered only a few hours
after the carjacking and robbery.  Given the close proximity in time
between the crimes and the recovery of property stolen during the
commission of those crimes, a logical connection could have been made
between the two events.

Although Petitioner contends that CALJIC 2.15 effectively allowed
the jury to convict him based on his possession of stolen property,
CALJIC 2.15 explicitly prohibited the jury from doing so: "If you find
that a defendant was in conscious possession of stolen property, the
fact of that possession is not by itself sufficient to permit an
inference that the defendant is guilty of the crime of robbery,
carjacking and petty theft." [RT at 382-83; CT at 369.]  Instead,
CALJIC 2.15 allowed the jury to infer guilt only if corroborating
evidence tended to prove Petitioner's guilt.  [Id.]  Furthermore, the
jury was instructed that it could not convict Petitioner of either
robbery or carjacking unless each element of the given crime was
established beyond a reasonable doubt.  [RT at 390-98; CT at 378, 383,
389-90, 396 (CALJIC 2.61, 2.90, 9.40, 9.46).]  The jury was also
instructed that Petitioner was presumed innocent and that the State
bore the burden of proving his guilt beyond a reasonable doubt.  [RT
at 387-89; CT at 383 (CALJIC 2.90).]  In short, CALJIC 2.15 was
warranted under the facts and charges against Petitioner, and it did
not lessen the State's burden of proof.  Accordingly, the trial court

22

1  did not err in instructing the jury with CALJIC 2.15.

2      Likewise, the trial court committed no error in failing to
3  supplement or clarify CALJIC 2.15.  Although Petitioner maintains that
4  the trial court should have explicitly instructed the jury that any
5  inference allowed by CALJIC 2.15 could be dispelled by countervailing
6  evidence, the instructions given to the jury already made that clear.
7  As an initial matter, CALJIC 2.15, itself, informed the jury that it
8  did not have to draw any inference from Petitioner's possession of
9  stolen property; instead, the instruction merely permitted jurors to
10  draw an inference from that fact.  [See RT at 382-83; CT at 369.]
11  Furthermore, the jury was instructed with CALJIC 2.01 (Sufficiency of
12  Circumstantial Evidence - Generally), which stated: "[I]f the
13  circumstantial evidence as to any particular count permits two
14  reasonable interpretations, one of which points to the defendant's
15  guilt and the other to his innocence, you must adopt that
16  interpretation that points to the defendant's innocence, and reject
17  that interpretation that points to his guilt."  [RT at 381; CT at
18  366.]  That instruction, coupled with CALJIC's 2.15 permissive
19  language, left no doubt that the jury could reject any inference
20  stemming from Petitioner's possession of stolen property.

21      Furthermore, even if CALJIC 2.15 had been given in error,
22  Petitioner would not be entitled to habeas relief because the
23  instruction did not have a substantial and injurious impact on the
24  verdict.  The evidence against Petitioner as to the carjacking and
25  robbery was overwhelming.  As discussed above, Petitioner confessed to
26  participating in both crimes; however, even aside from the confession
27  the evidence against him was strong.  Although he did not admit to
28  personally using a gun during the carjacking, he nevertheless admitted

1  that he held the gun at some point in the evening and that a gun was

2  used in the commission of the carjacking and robbery.  [RT at 334-35.]

3  Furthermore, Rodriguez, the carjacking and robbery victim, repeatedly

4  identified Petitioner as the man who had stolen the car from him at

5  gunpoint.  [RT at 41-43, 50-51.]  At trial, Rodriguez testified that

6  he had "no doubt" Petitioner was the person pointing the gun at him

7  and issuing demands during the carjacking.  [RT at 42.]  Rodriguez had

8  ample opportunity to view Petitioner, in that the incident lasted for

9  ten minutes, during which no other activity distracted him.  [RT at

10  61.]  Rodriguez further testified that, during a period of minutes, he

11  and Petitioner stood face to face, with only five feet between them.

12  [RT at 66-67.]  Finally, when he was arrested, Petitioner had in his

13  possession Rodriguez's ATM card, which had been taken during the

14  carjacking and robbery.  [RT at 37-38, 208-10.]  Police also found the

15  key to Rodriguez's car in Petitioner's sock.  [RT at 284-85.]

16      In short, there is no reason to believe the jury would have

17  reached a different conclusion on Petitioner's guilt had the court not

18  used CALJIC 2.15.  Thus, habeas relief is not warranted on this claim.

19      **b.   CALJIC 2.52 (Flight After Crime)**

20      The court read the following instruction on flight after crime:

21          The flight of a person after the commission of a crime,

22      or after he is accused of a crime, is not sufficient in

23      itself to establish his guilt, but is a fact which, if

24      proved, may be considered by you in the light of all other

25      proved facts in deciding whether a defendant is guilty or

26      not guilty.  The weight to which this circumstance is

27      entitled is a matter for you to decide.

28  [RT at 386; CT at 376.]

24

1    Petitioner contends that the trial court erred in instructing the
2    jury with CALJIC 2.52 because no evidence established that he knew he
3    was accused of a crime when he fled.   Additionally, he asserts that
4    the instruction, as given to his jury, omitted the word "immediately"
5    in the first clause of the instruction.   Stated properly, the clause
6    would have read, "The flight of a person <u>immediately</u> after the
7    commission of a crime. . . ."   Cal. Jury Instr., Crim. 2.52 (emphasis
8    added).   According to Petitioner, the omission of the word
9    "immediately" allowed the jury to infer guilt without requiring the
10   factual predicate for the inference to be proven – namely, that he
11   fled from authorities immediately after committing the crimes with
12   which he was charged.

13       The court of appeal held that the instruction did not violate
14   Petitioner's right to due process.   [Lodged Doc. No. 5 at 7.]   In so
15   doing, the court explained that California law does not require
16   evidence that a criminal defendant know he is accused of a crime as a
17   prerequisite for instructing the jury with CALJIC 2.52.   [<u>Id.</u>]   The
18   court of appeal agreed with Petitioner that the trial court erred
19   under state law in omitting the word "immediately" from CALJIC 2.52,
20   but concluded that the error was harmless because the time between the
21   crimes and Petitioner's flight "was not so extensive that no
22   reasonable juror could infer the flight showed consciousness of guilt
23   of any of the crimes."   [<u>Id.</u> at 8.]   Finally, the court of appeal
24   noted that the evidence against Petitioner was "more than enough to
25   support his convictions."   [<u>Id.</u> at 8-9.]

26       The court of appeal did not commit constitutional error in
27   rejecting Petitioner's challenges to CALJIC 2.52.   The Ninth Circuit
28   has repeatedly held that a trial court's decision to instruct a jury

1   with CALJIC 2.52 does not violate the accused's right to due process.

2   <u>Karis v. Calderon</u>, 283 F.3d 1117, 1132 (9th Cir. 2002); <u>Houston v.</u>

3   <u>Roe</u>,177 F.3d 901, 910 (9th Cir. 1999).   Indeed, as the Ninth Circuit

4   has observed in rejecting a due process challenge to CALJIC 2.52, the

5   instruction may, in fact, benefit the accused because it admonishes

6   the jury that the accused's flight alone is insufficient to establish

7   his guilt as to any crime.   <u>See</u> <u>Karis</u>, 283 F.3d at 1132.

8        Here, Petitioner's challenge to CALJIC 2.52 likewise fails

9   because the use of CALJIC 2.52 could not have rendered his trial

10  fundamentally unfair.   First, the jury could have drawn a rational

11  connection between Petitioner's flight and a consciousness of guilt.

12  Indeed, it is reasonable to conclude that, if a person flees police

13  within hours of committing a crime, he does so because he knows he is

14  guilty of the crime.   Further, this inference would be rational

15  regardless of whether the person knows he is accused of a crime.[4]

16  Whether the person is aware or unaware that authorities have focused

17  upon him as a suspect, fleeing from police after committing crime

18  supports a rational inference that the person fleeing does so from a

19  guilty conscience.   <u>See</u> <u>People v. Mason</u>, 52 Cal. 3d 909, 277 Cal.

20  Rptr. 166 (1991).   Here, Petitioner fled from police just hours after

21  carjacking and robbing Rodriguez.   As the court of appeal observed, he

22  was helping others move property from one stolen car to another when

23  he fled upon hearing an officer shout "police!" [Lodged Doc. No. 5 at

24  8.]   Under these circumstances, the jury could have drawn a rational

25  _____

26       [4]   As noted by the court of appeal, the California Supreme Court
    has explicitly held that the instruction does not deprive a criminal
27  defendant of a fair trial, even if the defendant fled without knowing
    that authorities suspected him of committing the given crime. [Lodged
28  Doc. No. 5 <u>(citing</u> <u>People v. Pensinger</u>, 52 Cal. 3d 1210, 1243-44, 278
    Cal. Rptr. 640, 654-55 (1991).)

1   connection between Petitioner's criminal activity and his flight.

2       Moreover, the fact that CALJIC 2.52, as given to the jury in

3   Petitioner's case, omitted the word "immediately," is not enough to

4   show that the instruction rendered the trial fundamentally unfair.  As

5   the court of appeal observed, the omission of the word "immediately"

6   rendered the instruction infirm under California law.  [Id. at 7-8.]

7   However, on habeas review, federal courts do not address violations of

8   state law.  See Houston, 177 F.3d at 910 n.3 (rejecting due process

9   challenge to CALJIC 2.52 even though California authority suggested

10  instruction was given in error because misapplication of state law is

11  beyond scope of federal habeas review).  Despite the trial court's

12  failure to include the word "immediately" in the instruction, the

13  evidence at trial showed that Petitioner fled from police only hours

14  after carjacking and robbing Rodriguez.  This short period of time

15  between the crime and the flight was not enough to render the jury's

16  consideration of the flight improper.  See Mason, 52 Cal. 3d at 941-42

17  (trial court did not err in admitting evidence of flight from police

18  even though flight occurred more than four weeks after defendant

19  murdered victim); People v. McWhorter, 47 Cal. 4th 318, 97 Cal. Rptr.

20  3d 412 (2009)(flight instruction properly given where, "within hours"

21  of committing murder in California, defendant told family members he

22  would be going to Las Vegas).  Thus, the trial court's omission of the

23  word "immediately" did not render Petitioner's trial fundamentally

24  unfair.  See McMillian v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994)

25  (flight instruction not erroneous where prosecution evidence

26  established factual predicate for flight).

27      Furthermore, even if CALJIC 2.52 was given in error, that error

28  was not prejudicial under Brecht, 507 U.S. at 637-38.  CALJIC 2.52

1  simply allowed the jury to consider Petitioner's flight from police.
2  It did not authorize the jury to infer Petitioner's guilt based on his
3  flight from police.  On the contrary, it specifically prohibited the
4  jury from relying solely on Petitioner's flight to establish guilt.
5  In any event, the jury was properly instructed on the elements of each
6  crime, the need for proof as to each element of each crime, and the
7  prosecutor's burden of proving each element.  [RT at 387-98; CT at
8  378, 383, 389-97.]  The verdict shows that the jury followed these
9  instructions and did not simply convict Petitioner based on the fact
10 that he fled when confronted by police: the jury acquitted Petitioner
11 of three of the counts with which he was charged.  [CT at 417
12 (reflecting that jury acquitted Petitioner on one count of petty theft
13 and two counts of second degree robbery.]  Moreover, as discussed
14 above in connection with Petitioner's challenge to CALJIC 2.15, the
15 evidence of Petitioner's guilt was overwhelming.  Indeed, Petitioner
16 confessed to each charge on which he was convicted.  Accordingly, to
17 the extent that the jury considered Petitioner's flight, that
18 consideration would have been relatively insignificant when compared
19 to the strong evidence of Petitioner's guilt.

20     In sum, the trial court's decision to instruct the jury with
21 CALJIC 2.52 did not deprive Petitioner of a fair trial.  The jury
22 could have drawn a rational connection between Petitioner's flight and
23 his commission of the crimes only hours earlier.  The instruction
24 could not have had a substantial and injurious impact on the verdict
25 because it allowed the jury only to consider the evidence of flight
26 and the jury was properly instructed regarding the State's burden of
27 proof.  Finally, the evidence against Petitioner was overwhelming.
28     Accordingly, habeas relief is not warranted on this claim.

28

C.   **CLAIM FOUR – DEFENSE COUNSEL'S FAILURE TO OBJECT**

In his fourth claim for relief, Petitioner asserts that this court should excuse his trial counsel's failure to object to, or request instructions supplementing, CALJIC 2.15 and CALJIC 2.52. Petitioner does not claim ineffective assistance of counsel in violation of his Sixth Amendment right to counsel.  Instead, he simply asserts that counsel's failure to object to CALJIC 2.15 and 2.52 should not bar this court's review of challenges to the instructions.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." Estelle, 502 U.S. at 68; see also 28 U.S.C. § 2254(a).  Habeas relief is not available for an alleged error in the interpretation or application of state law.  See id. at 68; Dugger v. Adams, 489 U.S. 401, 409, 109 S. Ct. 1211, 103 L. Ed. 2d 435 (1989)("The availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution.").

Petitioner's Claim Four does not present a cognizable claim for relief.  Petitioner apparently asserted this claim believing that Respondent would argue that he was procedurally barred from raising some or all of the challenges he asserts in Claims Two and Three. Respondent, however, made no such argument, but, instead, addressed the merits of Petitioner's claims, and those claims have also been considered, on their merits, in the above discussion.

Moreover, the court of appeal, in rejecting Petitioner's challenges to the jury instructions, addressed the merits of Petitioner's challenges, despite trial counsel's failure to challenge the instructions on each of the grounds that Petitioner asserted on

29

appeal.   [See Lodged Doc. No. 5 at 5-7.]   Thus, even assuming
Petitioner has raised a cognizable claim, the claim would fail because
he suffered no prejudice from the alleged error.

Thus, Petitioner is not entitled to habeas relief on this claim.

### D.   CLAIM FIVE - SIXTH AMENDMENT SENTENCING ERROR

In his fifth claim for relief, Petitioner faults the trial court
for departing from the mid term sentence and, instead, imposing an
upper term sentence for Petitioner's carjacking conviction.
Petitioner contends that the resulting sentence was unconstitutional
because it was based on facts that were neither admitted by Petitioner
nor found by a jury.   Specifically, Petitioner maintains that the
trial court cited the following invalid facts in sentencing him to the
upper term for carjacking Rodriguez: (1) Rodriguez was a particularly
vulnerable victim; (2) Petitioner occupied a leadership position in
committing the carjacking; and (3) Petitioner would be sentenced
concurrently on other counts for which he could have been sentenced
consecutively.   [RT at 460-61.]

The court of appeal rejected this argument.   [Lodged Doc. No. 5
at 9-11.]   In doing so, the court of appeal relied on the California
Supreme Court's opinion in People v. Black, 35 Cal. 4th 1238, 29 Cal.
Rptr. 3d 740 (2005).   There, the California Supreme Court held that
courts are permitted to engage in post-verdict factfinding in
selecting the appropriate sentence, provided that the resulting
sentence is within the statutorily prescribed range.   Black, 35 Cal.
4th at 1255.   Because Petitioner's upper term sentence for carjacking
fell within the statutorily prescribed sentencing range, the court of
appeal concluded that the resulting sentence was constitutional.
[Lodged Doc. No. 5 at 10-11.]

As discussed below, the court of appeal's decision rejecting Petitioner's Sixth Amendment sentencing error claim was contrary to clearly established Supreme Court law.  The court of appeal's reliance on <u>Black</u> for the proposition that the Sixth Amendment permits judges to impose upper term sentences based on post-verdict judicial factfinding conflicts with the United States Supreme Court's decision in <u>Cunningham v. California</u>, 549 U.S. 270, 127 S. Ct. 856, 166 L. Ed. 2d 856 (2007).[5]  Accordingly, the state court's decision is not entitled to AEDPA deference pursuant to § 2254(d)(1), and <u>de novo</u> review of Petitioner's claim is required to determine whether a constitutional violation occurred.  <u>Butler</u>, 528 F.3d at 641 (applying de novo review after finding that state court decision upholding California's sentencing scheme was contrary to clearly established Supreme Court precedent)(<u>citing</u> <u>Frantz v. Hazey</u>, 533 F.3d 724, 735 (9th Cir. 2008)(en banc)).

**1.   <u>Legal Standard</u>**

In <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), the Supreme Court held that the Sixth Amendment requires that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  In <u>Blakely v. Washington</u>, 542 U.S. 296, 303-04,

_____

[5]  Although <u>Cunningham</u> was decided long after the court of appeal addressed Petitioner's challenge to his sentence, <u>Cunningham</u> nevertheless controls because the Ninth Circuit has held that <u>Cunningham</u> applies retroactively to cases that became final before it was decided.  <u>Butler v. Curry</u>, 528 F.3d 624, 639 (9th Cir. 2008) (<u>Cunningham</u> did not announce new rule of constitutional law and may be applied retroactively on collateral review).  Respondent initially argued that <u>Cunningham</u> could not be applied retroactively here, but has since abandoned that argument.  [Supp. Answer at 1-2.]

1    124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), the Supreme Court held that

2    "the 'statutory maximum' for Apprendi purposes is the maximum sentence

3    a judge may impose solely on the basis of the facts reflected in the

4    jury verdict or admitted by the defendant.  In other words, the

5    relevant 'statutory maximum' is not the maximum sentence a judge may

6    impose after finding additional facts, but the maximum he may impose

7    without any additional findings."  See also United States v. Booker,

8    543 U.S. 220, 232, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005).

9         Under California's determinate sentencing law ("DSL"), the

10   statute defining a given offense prescribes three terms of

11   imprisonment – lower, middle, and upper.  Cunningham, 127 S. Ct. at

12   861 (2007).  In Cunningham, the Supreme Court held that California's

13   DSL, which authorized the judge, not the jury, to find facts exposing

14   the defendant to an elevated upper term sentence, violated the

15   defendant's right to a trial by jury.  Id. at 868-71.  In finding that

16   California's DSL violated the right to jury trial, the Court explained

17   that "the middle term prescribed in California's statutes, not the

18   upper term, is the relevant statutory maximum."  Id. at 868.

19   Consequently, any fact permitting the imposition of an upper term –

20   other than those reflected in the jury's verdict or admitted by the

21   defendant – must be found by the jury, not the judge.  Id. at 868-71.

22        **2.   Application**

23        Although, in Petitioner's case, the court of appeal erred in

24   concluding that the Sixth Amendment permits judges to engage in

25   factfinding to impose an upper term sentence, that error does not

26   justify habeas relief because it was harmless.  Butler v. Curry, 528

27   F.3d 624, 648 (9th Cir. 2008)(citing Washington v. Recuenco, 548 U.S.

28   212, 220-22, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006))(holding that

32

1    sentencing errors in violation of Sixth Amendment are not structural
2    and are subject to harmless error analysis).

3        Under California law, "only one aggravating factor is necessary
4    to authorize an upper term sentence." Butler, 528 F.3d at 641.
5    Citing this rule, the Ninth Circuit has found that imposition of an
6    upper term sentence under the DSL based on a valid aggravating factor
7    is permissible under Cunningham, even when the trial court relies on
8    other aggravating factors that would not support the upper term:

9        [I]f at least one of the aggravating factors on which the
10       judge relied in sentencing [the defendant is] established in
11       a manner consistent with the Sixth Amendment, [the
12       defendant's] sentence does not violate the Constitution.
13       Any additional factfinding [is] relevant only to selection
14       of a sentence within the statutory range.

15   Id. at 643.[6]

16       In light of Butler, the trial court's decision to impose an upper
17   term in Petitioner's case was constitutional.  The trial court imposed
18   the upper term for the carjacking conviction, in part, because "there
19   are other counts that are going to be imposed that could be imposed
20   consecutive [sic] for which concurrent time is going to imposed."  [RT
21   at 461; Lodged Doc. No. 5 at 10.]  This fact was reflected by the
22   jury's verdict, as that verdict - and that verdict alone - made
23   Petitioner eligible to be sentenced to consecutive sentences for his

24   _____

25       [6]  In reaching this conclusion, the Ninth Circuit relied on the
     California Supreme Court's decision in People v. Black, 41 Cal. 4th
26   799, 805, 62 Cal. Rptr. 3d 569 (2007)(Black II).  In Black II, the
     court observed that "as long as a single aggravating circumstance
27   . . . has been established in accordance with the requirements of
     Apprendi and its progeny, any additional fact finding engaged in by
28   the trial court in selecting the appropriate sentence . . . does not
     violate the defendant's right to jury trial."  41 Cal. 4th at 812.

1  convictions for receiving stolen property, the robbery of Rodriguez,

2  and personal use of firearm in robbing Rodriguez robbery.[7]   See Oregon

3  v. Ice, ___ U.S. ___, 129 S. Ct. 711, 172 L. Ed. 2d 517 (2009)(state

4  statutory sentencing schemes making "concurrent sentences the rule,

5  and consecutive sentences the exception" "encounter[] no Sixth

6  Amendment shoal").   Because the trial court sentenced Petitioner

7  concurrently as to those convictions, it also acted within its

8  discretion to cite that fact in imposing an upper term sentence on the

9  carjacking conviction.   See Cal. R. Ct. 4.421(a)(7)(defendant's

10 conviction of other crimes for which consecutive sentences could have

11 been imposed but for which concurrent sentences were imposed as

12 aggravating factor warranting upper term).

13      Alternatively, the trial court's imposition of the upper term

14 sentence does not warrant habeas relief because there is no grave

15 doubt that the jury would have found, as the trial court did, that

16 Rodriguez was a particularly vulnerable victim.   See Cal. R. Ct. 4.421

17 (a)(3)(listing fact that "[t]he victim was particularly vulnerable" as

18 aggravating factor warranting upper term).   The carjacking occurred at

19 1:00 a.m. on a weekday, a time when most people are asleep.   Just

20 before the carjacking occurred, Rodriguez was sitting alone in his

21 car, on an empty residential street.   [RT at 38-39, 61.)   He was

22 confronted by four individuals, at least one of whom was armed with a

23 gun.   [RT at 40-43, 45-47.]   Considering that Rodriguez was isolated

24 from others and could not expect help from anyone passing by, and

25 considering that he was outnumbered four to one, there is no doubt

26

27      [7]   The trial court found that it could sentence Petitioner
   consecutively for the robbery of Rodriguez because it was a separate
   crime from the carjacking.   [RT at 461.]   Petitioner did not object to
28 this finding at trial, nor did he did challenge it on appeal.

1  that, if asked to do so, the jury would have found that he was a

2  particularly vulnerable victim.   Accordingly, any error on the trial

3  court's part was harmless.

4       Consequently, Petitioner is not entitled to habeas relief on his

5  fifth ground for relief.

6                      **VI.   <u>RECOMMENDATION</u>**

7       For the reasons discussed above, it is recommended that the court

8  issue an order: (1) approving and accepting this Report and

9  Recommendation; and (2) denying the petition and dismissing this

10  action with prejudice.

11

12  DATED:   March 15, 2011

13

14                                   _____
                                     CARLA M. WOEHRLE
15                                   United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28